# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PATRICIA KISER PORTER,               )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )          1:21CV2
                                     )
KILOLO KIJAKAZI,                     )
Acting Commissioner of Social        )
Security,                            )
                                     )
                    Defendant.[1]    )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Patricia Kiser Porter, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Brief); Docket Entry 14 (Defendant's Memorandum); Docket Entry 15 (Plaintiff's Reply)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 213-21), alleging a disability onset date of June 3, 2016 (<u>see</u> Tr. 213, 218).[2] Upon denial of that application initially (Tr. 84-100, 119-22) and on reconsideration (Tr. 101-18, 126-33), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 134-35). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 48-83.) The ALJ subsequently ruled that Plaintiff established disability beginning on August 28, 2019, but did not qualify as disabled under the Act prior to that date. (Tr. 13-42.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 212, 375-78), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since the amended alleged onset date.

. . .

3. Since the amended onset date of disability, July 1, 2017, [Plaintiff] has had the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of multiple joints; and obesity.

. . .

---

[2] At the hearing, Plaintiff amended her alleged onset date from June 3, 2016, to July 1, 2017. (<u>See</u> Tr. 23, 52, 248.)

2

4.   Since July 1, 2017, [Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [P]rior to August 28, 2019, the date [Plaintiff] became disabled, [she] had the residual functional capacity to perform a range of light work . . . . Specifically, she can sit for up to 6 hours in an 8-hour workday, and stand and/or walk up to 6 hours in an 8-hour workday, can make frequent use of her left hand for gross and fine manipulation, and can occasionally engage in balancing, stooping, kneeling, crouching, crawling, and climbing.

. . .

6.   . . . [B]eginning on August 28, 2019, [Plaintiff] has the residual functional capacity to perform sedentary work . . . [. S]he can sit for up to 6 hours in an 8-hour workday, and stand and/or walk up to 2 hours in an 8-hour workday, can make frequent use of her left hand for gross and fine manipulation, and can occasionally engage in balancing, stooping, kneeling, crouching, crawling, and climbing.

. . .

7.   Prior to August 28, 2019, [Plaintiff] was capable of performing past relevant work as a cashier or cosmetics demonstrator. This work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

8.   Beginning on August 28, 2019, [Plaintiff]'s residual functional capacity has prevented [her] from being able to perform past relevant work.

. . .

12.  Since August 28, 2019, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [she] can perform.

3

. . .

13.  [Plaintiff] was not disabled prior to August 28,
2019, but became disabled on that date and has continued
to be disabled through the date of this decision.  Her
disability is expected to last twelve months past the
onset date.

(Tr. 27-42 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Even given those limitations, the Court should remand this case for
further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard."  Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted).  "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'"  Hunter v. Sullivan,
993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402

4

U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

5

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475

---

[3] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ [] committed a reversible error by failing to apply Social Security Ruling 12-2p[, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869 (July 25, 2012) ('SSR 12-2p')]'s second criteria set to evaluate [Plaintiff]'s fibromyalgia" (Docket Entry 12 at 4 (bold font and single-spacing omitted); see also Docket Entry 15 at 3-8);

2) "[t]he ALJ [] committed a reversible error [under Dowling v. Commissioner of Soc. Sec. Admin., 986 F.3d 377, 387-88 (4th Cir.

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

2021)] by relying on an incorrect regulatory framework to assess [Plaintiff]'s [RFC]" (Docket Entry 12 at 10 (bold font and single-spacing omitted)); and

3) "[t]he ALJ [] committed a reversible error" by "discount[ing Plaintiff]'s statements about the severity and limiting effects of her medical impairments solely because of a lack of substantiating objective medical evidence" (id. at 12 (bold font and single-spacing omitted); see also Docket Entry 15 at 8-12).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 4-18.)

### 1. Fibromyalgia

Plaintiff's first issue on review contends that "[t]he ALJ [] committed a reversible error by failing to apply [SSR] 12-2p's second criteria set to evaluate [Plaintiff]'s fibromyalgia." (Docket Entry 12 at 4 (bold font and single-spacing omitted); see also Docket Entry 15 at 3-8.) In particular, Plaintiff maintains that "SSR[] 12-2p provides two alternative sets of criteria for evaluating whether fibromyalgia is a medically determinable impairment" (Docket Entry 12 at 4), but that the ALJ relied solely on "[c]riteria set number one[, which] requires evidence of '[a]t least 11 positive tender points on examination'" (id. (quoting SSR 12-2p, 2012 WL 3104869, at *3)), in finding that fibromyalgia did not qualify as one of Plaintiff's medically determinable

impairments (id. at 5 (citing Tr. 30-31)). According to Plaintiff, "[t]he [] evidence suggests that [she] meets all of SSR 12-2p's criteria set number 2." (Id. at 8; see also id. at 6-8 (describing evidence Plaintiff believes satisfies criteria set number two (citing Tr. 441, 450, 455, 459, 465, 470, 574, 679, 682-83, 712, 717, 791, 810, 814-16, 824, 850, 876, 895-96)).) Plaintiff deems the ALJ's alleged error "significant" (id. at 9) because, if Plaintiff's fibromyalgia qualified as a medically determinable impairment, then she "would be entitled under *Arakas[ v. Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 96 (4th Cir. 2020),] and *Hines[*, 453 F.3d at 565,] to prove by her subjective testimony that her fibromyalgia symptoms are so continuous and severe [as] to prevent her from working a full eight-hour day" (id. at 10). Those contentions have merit and warrant remand.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death." Social Security Ruling 16-3p, <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added). The Commissioner's regulations provide that a medically determinable impairment "must result from anatomical[ or] physiological . . . abnormalities that can be shown by <u>medically acceptable clinical</u>

10

and laboratory diagnostic techniques[ and] . . . must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521 (emphasis added).[7] Furthermore, an ALJ cannot rely on a claimant's own "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of a[ medically determinable] impairment[ ]." Id. (emphasis added).[8]

With regards to fibromyalgia in particular, SSR 12-2p provides "two sets of criteria for diagnosing [fibromyalgia]," . . . the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia [('1990 ACR Criteria')] . . . [and] the 2010 ACR Preliminary Diagnostic Criteria [(2010 ACR Criteria')]." SSR 12-2p, 2012 WL 3104869, at *2. Under the 1990

---

[7] The regulations define "objective medical evidence" as "laboratory findings" and/or "signs," i.e., "abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. § 404.1502(f), (g).

[8] Applicable to benefits claims filed on or after March 27, 2017 (such as Plaintiff's DIB claim (see Tr. 23, 213)), the SSA amended the section governing the establishment of medically determinable impairments. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 5868-69, 2017 WL 168819 (Jan. 18, 2017). Prior to those amendments, an ALJ considered medical signs, laboratory findings, and a claimant's own statements to determine the presence of a medically determinable impairment. See 20 C.F.R. § 404.1508 (version effective prior to Jan. 18, 2017). The amendments recodified the rule at Section 404.1521 and now preclude ALJs from considering a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of a[ medically determinable] impairment[]." 20 C.F.R. § 404.1521; see also SB v. Commissioner of Soc. Sec. Admin., No. CV-20-1842, 2021 WL 5150092, at *4 (D. Ariz. Nov. 5, 2021) (unpublished) ("To the extent that [prior district court and appellate cases within the Ninth Circuit] hold that medical opinions and diagnoses are relevant to determine an impairment at step two, that has been expressly foreclosed by the text of § 404.1521. Instead, as discussed above, the [c]ourt finds that only the objective medical evidence in [the p]laintiff's medical records can be relevant to whether she had a medically determinable impairment . . . ." (internal citation omitted)).

11

ACR Criteria, an ALJ "may find that a person has a[ medically determinable impairment] of [fibromyalgia] if he or she has all three of the following:

> 1. A history of widespread pain . . . in all quadrants of the body . . . and axial skeletal pain . . . that persisted for at least 3 months[, but] . . . may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination . . . bilaterally . . . and both above and below the waist.
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded."

Id. at *2-3. Pursuant to the 2010 ACR Criteria, an ALJ "may find that a person has a[ medically determinable impairment] of [fibromyalgia] if he or she has all three of the following criteria:

> 1. A history of widespread pain [as defined above];
>
> 2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."

Id. at *3 (footnotes and internal parenthetical citation omitted).[9]

---

[9] SSR 12-2p identifies the following as fibromyalgia "[s]ymptoms and signs": "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity,
(continued...)

The ALJ here offered the following rationale for finding fibromyalgia a non-medically determinable impairment:

> Beginning in November of 2018, [Plaintiff] was diagnosed with fibromyalgia [(Tr. 648-866)]. <u>[SSR] 12-2p designates that there must be objective medical findings demonstrating at least eleven positive tender points out of a possible eighteen, and must be found bilaterally and both above and below the waist, for a medical diagnosis of fibromyalgia to be considered as a medically determinable impairment</u>. [Plaintiff] reported to Sabrina W. Campbell, FNP, a family nurse practitioner, that [Plaintiff] had been diagnosed with possible fibromyalgia from an unnamed medical treatment provider. Nurse Campbell included the diagnosis of fibromyalgia in her treatment note but <u>recorded no observations or signs of positive trigger points</u> [(Tr. 702-10)]. Shortly thereafter, on December 5, 2018, Rupak Thapa, M.D., a rheumatologist, examined [Plaintiff] and observed mild bony swelling of the [distal interphalangeal joints] of the bilateral hands, second and third [metacarpophalangeal joints] were full but not tender. He deemed the majority of [Plaintiff]'s symptoms as appearing to be from diffuse osteoarthritis as well as mechanical/degenerative disc disease of the lumbar spine. He saw no suggestion of psoriatic or inflammatory arthropathy. Dr. Thapa agreed with [Plaintiff] that diffuse pain and tenderness combined with fatigue and nonrestorative sleep "does suggest a component of fibromyalgia" and he discussed treatment options for this diagnosis. There were <u>no recorded descriptions of positive tender points within his treatment note</u> [(Tr. 711-18)]. Subsequent medical records that included a diagnosis of fibromyalgia combined this with the diagnosis of osteoarthritis and discussed treating the combined impairments. <u>There are no medical records in evidence in which a treating or examining medical professional recorded the presence of positive tender points</u>. Based on this, the [ALJ] finds that there is

---

<sup>9</sup> (...continued)
hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms." SSR 12-2p, 3104869, at *3 n.9. Coordinately, that Ruling lists the following as examples of "co-occurring conditions": "anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome." <u>Id.</u> at *3 n.10.

insufficient objective medical evidence as required under SSR 12-2p to consider fibromyalgia as a medically determinable impairment.

(Tr. 30-31 (emphasis added).)

In light of SSR 12-2p's alternative reliance on the 2010 ACR Criteria, which do not require tender point evidence, to establish fibromyalgia as a medically determinable impairment, see SSR 12-2p, 3104869, at *3, the ALJ erred both by stating that SSR 12-2p requires "objective medical findings demonstrating at least eleven positive tender points out of a possible eighteen" in order to find fibromyalgia a medically determinable impairment (Tr. 30), and by not considering whether Plaintiff's fibromyalgia met the requirements of the 2010 ACR Criteria (see Tr. 30-31). Moreover, for the reasons more fully explained below, those errors do not qualify as harmless under the circumstances presented here.

As Plaintiff has argued, "ample medical evidence [exists] suggesting that [she] meets all [three] requirements of the 2010 ACR . . . Criteria." (Docket Entry 15 at 5.) Regarding a history of widespread pain, the record demonstrates that Plaintiff's providers found tenderness on examination in her upper extremities, spine, and lower extremities, i.e., "pain in all quadrants of the body," SSR 12-2p, 3104869, at *2, for a period of longer than three months (see Tr. 380 (lumbar spine 6/11/18), 383 (lumbar spine 5/7/18), 581 (lumbar spine 7/31/18), 601 (cervical and lumbar spine, as well as legs 11/19/18), 662 (lumbar spine 8/30/18), 669

14

(right shoulder 10/2/18), 682 (thoracic and lumbar spine, as well as transverse abdominis, gastrocnemius-soleus, and quadriceps muscles 10/18/18), 781 (hips, knees, and ankles 4/25/19), 791 (lumbar spine 7/25/19), 815 (lumbar spine and legs 8/28/19), 824 (cervical, thoracic, and lumbar spine 9/12/19), 876 (lumbar spine, legs, and wrists 11/6/19), 895-96 (lumbar spine and legs 12/9/19), 906-07 (knees 12/10/19)).[10]   In addition, the record supports Plaintiff's assertion that she has shown repeated manifestations of six fibromyalgia symptoms, signs, or co-occurring conditions: muscle pain (see Tr. 682, 815, 824, 896), muscle weakness (see Tr. 814, 824, 876, 896), numbness or tingling (see Tr. 815, 824, 876, 896), depression (see Tr. 445, 451, 474, 574, 791, 850), anxiety disorder (see Tr. 445, 451, 456, 459, 466, 471, 478, 482, 574, 791, 796), and gastroesophageal reflux disease (see Tr. 441, 786, 793-95, 850, 855).[11]

The parties dispute, however, whether Plaintiff has provided evidence that her providers excluded other impairments that could cause her fibromyalgia symptoms. (See Docket Entry 12 at 8-9; see also Docket Entry 14 at 8-9; Docket Entry 15 at 5-7.) Plaintiff points out that "[t]reating rheumatologist Dr. [Rupak] Thapa

---

[10] Notably, neither the ALJ nor the Commissioner took the position that Plaintiff had not shown a history of widespread pain. (See Tr. 30-31; see also Docket Entry 14 at 8 (conceding that "[e]vidence of widespread pain . . . [wa]s not at issue").)

[11] The Commissioner does not expressly contest that Plaintiff has shown repeated manifestations of six fibromyalgia symptoms, signs, or co-occurring conditions. (See Docket Entry 14 at 6-9.)

15

reported that [anti-nuclear antibody ('ANA')], [anti-Sjögren's Syndrome antigen A antibody ('SS-A')], [anti-Sjögren's Syndrome antigen B antibody ('SS-B')], and rheumatoid factor testing were all normal, indicating [the] absence of autoimmune disorders to explain [Plaintiff]'s symptoms." (Docket Entry 12 at 8 (citing Tr. 712, 717); see also Docket Entry 15 at 6 (noting that Dr. Thapa found that Plaintiff "'did not have any psoriasis or inflammatory bowel disease to suggest psoriatic or inflammatory bowel disease related arthropathy'" (quoting Tr. 717)).) In response, the Commissioner contends that Dr. Thapa found that Plaintiff's "symptoms appeared to be f[ro]m osteoarthritis and degenerative disc disease of the lumbar spine" (Docket Entry 14 at 8 (citing Tr. 31, 711-18)), which the Commissioner deems "fatal to [Plaintiff]'s argument as [the requirement to exclude other impairments] applies to both the 1990 and 2010 ACR Criteria" (id. at 9). Plaintiff counters, via her Reply, that Dr. Thapa "distinguished between joint symptoms and fibromyalgia symptoms [and] . . . stated that[,] other than one report of joint swelling, the 'rest of the **joint symptoms** seems to be from diffuse osteoarthritis as well as mechanical/degenerative disc disease of the lumbar spine'" and further stated that he "agree[d] that [Plaintiff] ha[d] diffuse pain and tenderness which[,] in the scenario of fatigue and nonrestorative sleep[,] d[id] suggest a component of

16

fibromyalgia.'" (Docket Entry 15 at 6 (quoting Tr. 717) (emphasis supplied by Plaintiff).)

Here, the evidence could support a finding that Plaintiff's medical providers excluded other disorders that could cause her alleged fibromyalgia symptoms. SSR 12-2p expressly observes that testing to rule out fibromyalgia could include "complete blood counts, erythrocyte sedimentation rate [('ESR')], [ANA], thyroid function, and rheumatoid factor" tests. SSR 12-2p, 3104869, at *3. Here, Dr. Thapa ordered tests for gout and various autoimmune disorders such as lupus, Sjögren's syndrome, and rheumatoid arthritis, including blood tests for C3 and C4 complement, uric acid level, anti-cyclic citrullinated peptide ("CCP") antibody, rheumatoid factor, ANA, SS-A, and SS-B, all of which returned negative results. (See Tr. 700-01, 712, 717, 747-51.) Other medical providers have obtained negative results in tests of Plaintiff's uric acid level (see Tr. 434, 490), ESR (see Tr. 432, 488), ANA (see Tr. 434, 490), rheumatoid factor (see Tr. 434, 490), and thyroid function (see Tr. 433, 489). Additionally, Dr. Thapa stated that his "suspicion of gout [wa]s low" and ruled out psoriasis and inflammatory bowel disease as sources of Plaintiff's symptoms. (Tr. 717.) That evidence could permit a finding of exclusion of multiple other disorders that could have caused Plaintiff's alleged fibromyalgia symptoms. See Bullard v. Berryhill, No. CV 1:17-432, 2017 WL 10399270, at *17 (D.S.C. Oct.

17

12, 2017) (unpublished) (noting that "1990 and 2010 [ACR] Criteria do not specify how many other potential diagnoses must be excluded" and that, "[c]ontrary to the ALJ's finding, the record demonstrate[d] that [the p]laintiff's physicians excluded other conditions" via blood tests for "[anti-CCP] antibody, [ESR], Vitamin D, C-reactive protein ('CRP'), comprehensive metabolic panel, ferritin, complete blood count, thyroid-stimulating hormone, cortisol, [and] hepatitis B and C"), recommendation adopted, 2018 WL 4575148 (D.S.C. Sept. 25, 2018) (unpublished); see also Strickland v. Berryhill, No. 7:16CV252, 2017 WL 3910436, at *5 (E.D.N.C. Aug. 21, 2017) (unpublished) (holding that consultation to rule out rheumatoid arthritis constituted sufficient evidence that providers excluded other disorders), recommendation adopted, 2017 WL 3908675 (E.D.N.C. Sept. 6, 2017) (unpublished).

Furthermore, "the ALJ's error[s] in finding that Plaintiff's fibromyalgia was not a medically determinable impairment impacted the subsequent steps of the [SEP] because, once the ALJ found the impairment to be not medically determinable, [s]he was not required to consider it in determining Plaintiff's RFC." Penny Lou S. v. Commissioner of Soc. Sec., No. 2:18CV213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) (unpublished); see also Cooper v. Commissioner of Soc. Sec., No. 17CV1058, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) (unpublished) (finding difference between ALJ's failure to identify impairment as severe versus as medically

18

determinable "significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable"); Toney v. Berryhill, No. 9:17CV80, 2018 WL 4090630, at *4 (D.S.C. Aug. 28, 2018) (unpublished) (explaining that, "in assessing [RFC], the [SSA] considers *only* medically determinable impairments," and that, "because the ALJ concluded that [the plaintiff] did not have a medically determinable impairment of fibromyalgia, it would have been improper to consider it in the RFC calculation" (emphasis in original) (citation and internal quotation marks omitted)); Moore v. Berryhill, No. CV 17-3933, 2018 WL 2106470, at *2 (C.D. Cal. May 7, 2018) (unpublished) ("If the ALJ had found [the p]laintiff's alleged fibromyalgia to be a medically determinable impairment, . . . the ALJ may have viewed . . . [the p]laintiff's testimony in a new light."); Strickland, 2017 WL 3910436, at *5-6 (deeming ALJ's finding that fibromyalgia did not constitute a medically determinable impairment "flawed and not supported by substantial evidence," noting that "error potentially impacted each subsequent step of the [SEP], because [the plaintiff]'s fibromyalgia was not further considered," and observing that "consideration of [the plaintiff]'s fibromyalgia would likely impact the ALJ's [subjective symptom] determination, because it could account for the increased severity of [the plaintiff]'s pain and other symptoms"); Butler v. Colvin, No. 1:15CV3162, 2016 WL 8232243, at * 5 (E.D. Wash. Aug.

19

23, 2016) (unpublished) ("[B]y classifying [the p]laintiff's fibromyalgia as a non-medically determinable impairment — rather than a severe or non-severe impairment — the ALJ excluded the effects of this condition when formulating [the p]laintiff's RFC"); Allen v. Colvin, No. 2:15CV1191, 2016 WL 7368128, at *4 (W.D. Wash. Jan. 8, 2016) (unpublished) (noting that "[i]f the ALJ properly found [the p]laintiff's fibromyalgia was a medically determinable impairment, . . . the ALJ may have found [the p]laintiff's testimony regarding her pain, fatigue, and ability to function more [consistent with the evidence], which may have impacted the RFC determination").

In light of the foregoing analysis, Plaintiff's first assignment of error establishes prejudicial errors, requiring remand.

## 2. Error under Dowling

Next, Plaintiff maintains that "[t]he ALJ [] committed a reversible error [under Dowling] by relying on an incorrect regulatory framework to assess [Plaintiff]'s [RFC]." (Docket Entry 12 at 10 (bold font and single-spacing omitted).) According to Plaintiff, the Dowling court "held that, among other errors, an ALJ 'relied on an incorrect regulatory framework when he assessed [the claimant]'s RFC,'" because "[t]he ALJ [neither] cite[d] to 20 C.F.R. § 416.945, the regulation that 'explains how ALJ's [sic] should assess a claimant's RFC,' [n]or SSR 96-8p, the ruling 'that

20

provides guidance on how to properly evaluate an RFC,'" but rather based the "'RFC determination . . . entirely on [Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p")] and [SSR] 16-3p, which set out the process ALJs use to evaluate the intensity and persistence of [a claimant's] symptoms.'"  (Docket Entry 12 at 10-11 (quoting <u>Dowling</u>, 986 F.3d at 387) (internal quotation marks omitted).)  Plaintiff notes that the court in <u>Dowling</u> found that, because "'an RFC assessment is a separate and distinct inquiry from a symptom evaluation, [] the ALJ erred treating them as one and the same.'" (<u>Id.</u> at 11 (quoting <u>Dowling</u>, 986 F.3d at 387).)  Plaintiff maintains that, "[l]ike the ALJ in *Dowling*, the ALJ in this case failed to cite the regulatory provisions regarding assessment of RFC, . . . [but i]nstead . . . cited 20 C.F.R. § 404.1529 regarding evaluation of symptoms, 20 C.F.R. § 404.1520c regarding evaluation of medical opinions, and SSR 16-3p regarding evaluation of symptoms."  (<u>Id.</u> at 11-12 (citing Tr. 33).)  For the reasons explained below, Plaintiff's arguments fail as a matter of law.

Contrary to Plaintiff's arguments, the ALJ here did cite to the correct standards governing the assessment of RFC.  Although Plaintiff focuses on one page of the ALJ's decision to assert that the ALJ failed to cite the proper standards (<u>see</u> Docket Entry 12 at

21

11-12 (citing Tr. 33)), Plaintiff ignores the following recitation by the ALJ of the appropriate standards:

> Before considering step four of the [SEP], the [ALJ] must first determine [Plaintiff]'s [RFC] (20 CFR 404.1520(e)). An individual's [RFC] is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the [ALJ] must consider all of [Plaintiff]'s impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

(Tr. 25 (emphasis added).) In light of the above-quoted paragraph, the ALJ did not err under Dowling.

In sum, Plaintiff's second issue on review lacks merit.

### 3. Over-Reliance on Objective Medical Evidence

Plaintiff's third and final assignment of error maintains that "[t]he ALJ [] committed a reversible error" by "discount[ing Plaintiff]'s statements about the severity and limiting effects of her medical impairments solely because of a lack of substantiating objective medical evidence" (Docket Entry 12 at 12 (bold font and single-spacing omitted)), in violation of SSR 16-3p and Arakas (Docket Entry 12 at 12-14; see also Docket Entry 15 at 8-12). In that regard, Plaintiff emphasizes that SSR 16-3p "prohibits the ALJ from disregarding a claimant's 'statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.'" (Docket Entry 12 at 13 (quoting SSR 16-3p, 2017 WL 5180304, at *5).) Plaintiff further points out that the Fourth Circuit in Arakas

found that an ALJ had erred by "'referr[ing] at least five times to the supposed lack of objective medical evidence supporting [the plaintiff]'s complaints and repeatedly highlight[ing] the ways in which [the ALJ] believed [the plaintiff's] statements were inconsistent with the objective medical evidence.'" (<u>Id.</u> (quoting <u>Arakas</u>, 983 F.3d at 97).)

According to Plaintiff, the ALJ here found that Plaintiff's "'medically determinable impairments could reasonably be expected to cause the alleged symptoms'" (<u>id.</u> at 14 (quoting Tr. 36)), but then found that Plaintiff's "'statements about the intensity, persistence, and limiting effects of her symptoms [] are inconsistent because objective testing and the recorded observations of treatment providers did not support th[o]se statements'" (<u>id.</u> at 15 (quoting Tr. 33)). Plaintiff further notes that, "[a]t the completion of the summary [of medical evidence], the ALJ stated that 'a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by [Plaintiff],'" and that "'[t]he objective medical evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity o[r] frequency as to preclude the range of work described [in the RFC].'" (<u>Id.</u> (quoting Tr. 38)). Plaintiff thus argues that "[t]he ALJ stated three times that the

23

objective medical evidence d[id] not support [Plaintiff]'s symptom allegations[, but] she failed to state any other reason for discounting [Plaintiff]'s testimony" (<u>id.</u> (citing Tr. 33-38)), and therefore "effectively discounted [Plaintiff]'s symptom testimony solely because of a lack of substantiating objective medical evidence" and "in a manner expressly prohibited by both SSR 16-3p and the Fourth Circuit's holding in *Arakas*" (<u>id.</u> at 16).

In light of the recommendation to remand this matter on the basis of errors committed at step two of the SEP, and the fact that, after reassessing whether fibromyalgia qualifies as medically determinable in this case under the second alternative criteria, the ALJ, upon remand, well may need to re-evaluate Plaintiff's subjective symptoms reporting, the Court need not further address Plaintiff's contentions in her third assignment of error. The ALJ should note, however, that the Fourth Circuit in <u>Arakas</u> deemed fibromyalgia "a disease whose symptoms are entirely subjective," <u>Arakas</u>, 983 F.3d at 96, and thus held that "ALJs may not rely on objective medical evidence (or the lack thereof) – <u>even as just one of multiple medical factors</u> – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia," <u>id.</u> at 97 (emphasis added). If, upon remand, the ALJ finds fibromyalgia a medically determinable impairment, the ALJ should not "rely on objective medical evidence - even as just one of multiple medical factors -

24

to discount [Plaintiff]'s complaints regarding symptoms of fibromyalgia," id.

### III. CONCLUSION

Plaintiff has established errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that this matter be remanded under sentence four of 42 U.S.C. 405(g) for further administrative proceedings, including re-evaluation of whether Plaintiff's fibromyalgia constitutes a medically determinable impairment under either criteria set of SSR 12-2p, i.e., the 1990 ACR Criteria or the 2010 ACR Criteria. As a result, Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social Security (Docket Entry 11) should be granted, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 11, 2022

25